**HIGH OL' TIMES, INC., Atlantis Distributing, Inc., Windfaire, Inc., Bananas, Limited, a proprietorship of Pat Gibson, Star Blaze, a partnership, O'Connell's Coins & Novelties, a proprietorship of Joseph H. O'Connell, Jr., Shoppers Products East, a proprietorship of Fred Hudspeth, Frogs, Inc., Hollow Earth, a partnership, Steven Swimmer, John B. McLaughlin; Lynn Griggs and Leonard A. D'Orland**

**v.**

**George BUSBEE, Governor of Georgia, Arthur K. Bolton, Attorney General of Georgia, Randall Peek, District Attorney of the Stone Mountain Judicial Circuit, John R. Thompson, Solicitor for the State Court of DeKalb County, Robert T. Johnston, Solicitor for the State Court of Muscogee County, Hinson McAuliffe, Solicitor for the State Court of Fulton County and Herbert A. Rivers, Solicitor of the State Court of Cobb County.**

**Civ. A. No. 78–628.**

United States District Court,
N. D. Georgia,
Atlanta Division.

April 14, 1978.

---

Reber Boult, The Law Project, Atlanta, Ga., for plaintiffs.

G. Stephen Parker, Asst. Atty. Gen., Atlanta, Ga., for defendants.

### ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiffs bring this action seeking injunctive and declaratory relief and assailing the constitutionality of three newly-enacted Georgia criminal statutes: (1) Ga.Code § 79A–811.1, proscribing the sale or offer of "drug-related objects" to anyone; (2) Ga. Code § 26–9913, prohibiting the sale or providing of such objects to minors; and (3) Ga.Code § 26–9912, outlawing the sale or providing of any "restricted drug-related printed material" to minors.[1] [Full text of the three Georgia statutes is appended hereto]. The complaint identifies the statutes' challengers as a distributor, several retailers, and two occasional customers in the so-called "head shop" trade.[2] Plaintiffs' claims are alleged to arise under the United States Constitution Art. I, § 8, cl. 3; Art. I, § 9, cl. 3; Art. IV, § 2, cl. 1; the First, Fifth, Ninth, and Fourteenth Amendments; and 42 U.S.C. §§ 1983 and 1988. Jurisdiction of the court is invoked under 28 U.S.C. §§ 1331, 1343(3) and (4).

Presently before the court is plaintiffs' motion for a temporary restraining order, Rule 65(b), Fed.R.Civ.P., which motion came on for hearing by this court on April 11, 1978. At the conclusion of the hearing on the motion, plaintiffs' motion was DENIED as to Ga.Code §§ 79A–811.1 and 26–9913; and was taken UNDER ADVISEMENT as to Ga.Code § 26–9912.

1. Conviction upon a first offense by a transferor or by a minor who misrepresents his age is punishable as a misdemeanor. A subsequent offense by a transferor is sanctioned as a felony.

2. At the hearing on plaintiffs' motion for a temporary restraining order, the elusive term "head shop" appeared to defy plaintiffs' wit-

### ARTICLE III REQUIREMENTS

▮ Before proceeding to the merits of the motion, the justiciability of plaintiffs' action, particularly plaintiffs' standing to sue, must be examined. In order to avoid rendering advisory opinions, the court must evaluate the substance of plaintiffs' claimed "injury in fact" and alleged position within the "zone of interests." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Clearly the law does not require, nor even allow, under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), that plaintiffs await and suffer ongoing state criminal prosecutions under the challenged acts to evidence the necessary injury and interest. Threatened harm which is real, not "imaginary", "speculative", *id.* at 42, 91 S.Ct. 746, or "chimerical", *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), will satisfy the standing prerequisites. *Steffel v. Thompson,* 415 U.S. 452, 458–59, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930–31, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Wooley v. Maynard,* 430 U.S. 705, 712, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

▮ Plaintiffs herein have not yet been charged with violation of the disputed statutes but have demonstrated an actual threat of imminent prosecution if they continue in their trade or purchases not knowing which objects and which printed material in the shops' inventories fall within the ambit of these statutes. Individual plaintiff retailers have been subjected to business license revocations pursuant to county

nesses' definition. Alternately described as boutiques, novelty stores, and youth culture shops, the so-called "head shops" tend to include among their inventories: pipes, rolling papers, drug testing kits and cutting kits, small spoons, ornate straws, decorative mirrors, tweezers and clips, records, books, magazines, posters, and tapestries.

ordinance enforcement preceding enactment of the new state statutes. They have been subjected to arrests described as harassing when the officials failed to prosecute the charged criminal conduct. Testimony of Daniel Thomas Lackey. Counsel for plaintiffs, alarmed that his present clients were to be the enforcement targets of these three statutes, telephoned his concern to the respective, responsible enforcement chiefs. Counsel's alarm, rather than being allayed, was heightened by the officials' strong response of intended arrests and prosecution. The officials, defendants in this action, failed at the hearing on plaintiffs' motion for a temporary restraining order to deny or to refute the perceived and demonstrated threat of plaintiffs' imminent state prosecutions. *See Penthouse International Limited v. McAuliffe,* 436 F.Supp. 1241, 1247 & n. 14 (N.D.Ga.1977). The combination of plaintiffs' past history of suffering harassing arrest and their present sense of unrefuted impending prosecutions if they continue doing business, appears to constitute the concrete harm and imminence which the court must require.

If the plaintiff distributor and retailers remove items which are potentially identifiable as "drug-related" under the statutes, they contend that they will deplete their inventories by approximately 80%. To further document their threatened harm, these same plaintiffs testified of their present inability to retain a full complement of sales personnel with the constant foreboding of possible arrests. In this instance, measured against the circumstances of *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) and *Carey v. Population Services International,* 431 U.S. 678, 683 & n. 3, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), the three Georgia "head shop" statutes inflict on these plaintiffs the:

> 'injury in fact' that satisfies Art. III's case or controversy requirement, since '[t]he legal duties created by the statutory sections under challenge are addressed directly to vendors such as [these plaintiffs. They are] obliged either to heed the statutory prohibition, thereby incurring a direct economic injury through

constriction of [their] market, or to disobey the statutory command and suffer' legal sanctions.

*Carey v. Population Services International, supra,* at 683, 97 S.Ct. at 2015 *quoting Craig v. Boren, supra,* 429 U.S. at 194, 97 S.Ct. 451. Plaintiffs have demonstrated the qualifying personal stake and adversity of interests to overcome the court's constitutional limitations and prudential restraints, *see Barrows v. Jackson,* 346 U.S. 249, 255–57, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), in this litigation.

## ABSTENTION

### GA.CODE §§ 79A–811.1 and 26–9913

The court, ruling from the bench at the April 11, 1978, hearing, denied plaintiffs' motion for a temporary restraining order as to Ga.Code §§ 79A–811.1 and 26–9913, proscribing transactions involving "drug-related objects." An explication of our denial of plaintiffs' motion upon grounds of abstention is now in order. Our examination will begin with a presentation of relevant clauses of the statutes and an example of plaintiffs' constitutional challenge and will follow with a statement of our rationale for abstention.

Briefly, Ga.Code §§ 79A–811.1 and 26–9913 declare that it is unlawful "to sell, offer to sell, exchange, or offer to exchange any drug-related object. . . ." Two definitions of "drug-related objects" are pronounced. In Ga.Code § 79A–811.1,

> 'Drug-related object' means any instrument, device or object which is *primarily intended* for one or more of the following purposes: (1) to inject, ingest, inhale or otherwise introduce into the human body marijuana or a controlled substance; (2) to enhance the effect on the human body of marijuana or a controlled substance; (3) to test the strength, effectiveness, or purity of marijuana or a controlled substance. [Emphasis added.]

In Ga.Code § 26–9913 prohibiting sales to minors,

'Drug-related objects' means any machine, instrument, tool, equipment, contrivance or device *which an average person would reasonably conclude is intended* to be used for one or more of the following purposes:

(A) to introduce into the human body any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(B) to enhance the effect on the human body of any dangerous drug or controlled substance . . . .

(C) to conceal any quantity of any dangerous drug or controlled substance . . . .

(D) to test the strength, effectiveness or purity of any dangerous drug or controlled substance . . . . [Emphasis added.]

Plaintiffs' primary constitutional claim challenges the statutes as void for vagueness. Plaintiffs explain in one vagueness attack that their wares, for example an array of pipes for smoking, may be "primarily intended", Ga.Code § 79A–811.1, by some purchasers for licit purposes, while the same objects may be "primarily intended" by other buyers for drug-related uses. The plaintiffs contend that this statute fails to establish whether the "primary intention" is to be located in the mind of the purchaser or is to be concluded in the estimation of an average person, see Ga.Code § 26–9913, or is to be determined by the intention of transferor who may be prosecuted under the statute. Ga.Code § 26–9913 offers plaintiffs minimal, but possibly improper, guidance; Ga.Code § 79A–811.1 offers no present assistance to the wary. This described difficulty illustrates one of plaintiffs' many void for vagueness concerns.

■ With this brief illustration in mind, the court's decision to abstain may now be considered. The availability to the court of abstention, a "judge-made" doctrine, is severely circumscribed and limited to challenges posing "special circumstances." *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 91 L.Ed.2d 444 (1967). The availability of the doctrine requires consideration of the predictable delay and expense to be incurred if it is invoked. Plaintiff retailers have advised the court that their businesses are thinly-capitalized, rendering temporary suspensions in trading possibly fatal to their continued existence.

■ The court is mindful of the plaintiffs' plight but at the same time recognizes the imperative of avoiding:

unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. . . .

*Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965), *quoted in, Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 511, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). In plaintiffs' own challenge of vagueness they acknowledge that the definitions and standards of the statutes are unclear. Plaintiffs' constitutional challenge was filed minutes after the bills were signed into law by the Governor and consequently the highest state court has not yet had an opportunity to speak authoritatively in definition of the terms and standards in issue. When permitted such opportunity, the Georgia Supreme Court may remove some, if not all, of the statutes present ambiguities.[3] Until that time this court can only speculate as to which of the various available resolutions the Georgia court will adopt.

Recently, the Supreme Court in *Bellotti v. Baird*, 428 U.S. 132, 146–47, 96 S.Ct. 2857,

---

**3.** For example, the Georgia Supreme Court may reasonably interpret the operative language of Ga.Code § 79A–811.1, "drug-related object means any instrument, device or object which is *primarily intended* for [drug use] . . . .," as solely applicable to the primary intentions of the vendor or transferor who may be prosecuted under the act. Such interpretation may well shield Ga.Code § 79A–811.1 from constitutional attack. Regrettably, such construction may not also be applied to Ga.Code § 26–9913 in which the state legislature has anomalously selected the tort "reasonable man" standard to measure the intended use of the subject objects.

2866, 49 L.Ed.2d 844 (1976), reviewed an abortion consent statute posed under similar circumstances and reminded that:

[a]s we have held on numerous occasions, abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.' *Harrison v. NAACP*, 360 U.S. 167, 177 [, 79 S.Ct. 1025, 3 L.Ed.2d 1152] (1959). *See also Colorado River Conservation District v. United States*, 424 U.S. 800, 813–14, [96 S.Ct. 1236, 47 L.Ed.2d 483] (1976); *Carey v. Sugar,* 425 U.S. 73, 78–79 [96 S.Ct. 1208, 47 L.Ed.2d 587] (1976); *Kusper v. Pontikes,* 414 U.S. 51, 54–55 [, 94 S.Ct. 303, 38 L.Ed.2d 260] (1973); *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 510–11 [, 92 S.Ct. 1749, 32 L.Ed.2d 257] (1972); *Zwickler v. Koota,* 389 U.S. 241, 249 [, 88 S.Ct. 391, 19 L.Ed.2d 444] (1967); *Railroad Commission v. Pullman Co.,* 312 U.S. 496, [61 S.Ct. 643, 85 L.Ed. 971] (1940).

Heeding this caution, the court finds that the challenged statutes are susceptible to various interpretations which possibly may avoid the constitutional challenge, but certainly will alter the nature of the problem posed. The court denying in part plaintiffs' temporary restraining order, will abstain from present consideration of Ga.Code §§ 79A–811.1 and 26–9913 pending their authoritative interpretation by the Georgia Supreme Court.

Again mindful of plaintiffs' inability to endure protracted delay or expense and in response to plaintiffs' oral motion, the court pursuant to 28 U.S.C. § 1292(b) will CERTIFY an APPEAL of our order denying plaintiffs' motion for a temporary restraining order as to Ga.Code §§ 79A–811.1 and 26–9913. The court certifies said interlocutory appeal having found that the lacking authoritative state interpretation of the disputed statutes constitutes the controlling question of law, as defined in 28 U.S.C. § 1292(b), and necessitates our present abstention as described above. Plaintiffs have chosen this course recognizing that the circuit court of appeals has available, if it so elects, a procedure for certification of a question of state law to the Georgia Supreme Court, Ga.Code § 24–3902, a procedure regrettably unavailable to the federal district court.

## FIRST AMENDMENT CHALLENGE: GA.CODE § 26–9912

■ A final consideration concerns plaintiffs' motion for a temporary restraining order as to Ga.Code § 26–9912 proscribing the sale or offer of certain "restricted drug-related printed material" to minors. "Restricted material" is defined as any book, magazine, or printed matter which, "when considered in its entirety in accordance with the prevailing standards of the adult community taken as a whole", could be interpreted as having as its primary purpose encouragement of illegal drug use. The court in our present review finds that the statute with its broad proscription and its inapposite definitional standard, a standard apparently drawn from *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) [community standard governing obscenity decisions], is not readily susceptible to any saving or conforming construction. Defendants to date have been unable to tender any possible alternative interpretations. The statute's unconstitutional affliction appears to affect the very nature and purpose of the statute rather than merely to blur the definition of its terms or boundaries, *compare* Ga.Code § 26–9912 *with* Ga. Code §§ 79A–811.1 *and* 26–9913.

If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction.

*Harman v. Forssenius, supra* 380 U.S. at 535–36, 85 S.Ct. at 1182. *Baggett v. Bullitt,* 377 U.S. 360, 375–79, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

■ The exceptions to protected speech under the First Amendment are limited in number. *Cohen v. California*, 403 U.S. 15, 24, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Although the state may restrict some drug-related speech, *see Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 389, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) ["Narcotics for Sale" is not protected speech], the scope of its restriction authority is necessarily narrow, *id.* at 391, 93 S.Ct. 2553. *See also Carey v. Populations Services International, supra*, 431 U.S. at 701, 97 S.Ct. 2010, *citing Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) ["inciting . . . imminent lawless action" is not protected speech.] The state legislature has apparently ignored these limitations and has broadly proscribed all drug-related printed material which it has inexplicably identified and defined by the community standard for obscenity determinations. This court therefore has the "duty . . . to exercise its properly invoked jurisdiction . . .," *Harman v. Forssenius, supra* 380 U.S. at 535–36, 85 S.Ct. at 1182, and to review the constitutionality of Ga.Code § 26–9912, Restricted Drug-related Printed Material.

The same reasons which counsel against this court's abstention, now compel our GRANT of plaintiffs' motion for a temporary restraining order as to Ga.Code § 26–9912 for a period of ten (10) days to run from the date of this order. Plaintiffs otherwise will suffer the immediate and irreparable harm of businesses lost due to the enforcement of a state statute which appears to ignore the citizenry's First Amendment rights. The temporary restraining order imposed by the court today and running for ten days, shall be EXTENDED for ten (10) additional days thereafter upon the good cause previously demonstrated by plaintiffs. *See* Rule 65(b), Fed.R.Civ.P.

This action, limited to the sole issue of the constitutionality of Ga.Code § 26–9912, is hereby set down for a hearing on plaintiffs' motion for a preliminary injunction, Rule 65(a), Fed.R.Civ.P., on Monday, May 1, 1978, at 3:00 P.M. in a courtroom to be assigned by the Clerk of the Court. The court hereby also ORDERS that the trial on the merits of plaintiffs' action as to Ga. Code § 26–9912 be ADVANCED and CONSOLIDATED with the hearing on the preliminary injunction on May 1, 1978. *See* Rule 65(a)(2).

Accordingly, the court, having previously DENIED plaintiffs' motion for a temporary restraining order as to their challenges of Ga.Code §§ 79A–811.1 and 26–9913, hereby: (1) has ABSTAINED from review of Ga. Code §§ 79A–811.1 and 26–9913; (2) has CERTIFIED for INTERLOCUTORY APPEAL, 28 U.S.C. § 1292(b), our denial of plaintiffs' motion for a temporary restraining order as to Ga.Code §§ 79A–811.1 and 26–9913; (3) has GRANTED plaintiffs' motion for a temporary restraining order as to Ga.Code § 26–9912 to run for ten (10) days from the date of this order; (4) has GRANTED plaintiffs an EXTENSION of said temporary restraining order to continue for ten (10) additional days thereafter; (5) has ORDERED a hearing on plaintiffs' motion for a preliminary injunction as to Ga.Code § 26–9912 for Monday, May 1, 1978, at 3:00 P.M.; and (6) has ORDERED that the trial on the merits as to Ga.Code § 26–9912 be ADVANCED and CONSOLIDATED with the hearing on the preliminary injunction on May 1, 1978.

IT IS SO ORDERED.

## APPENDIX

H.B.No.1368 (COMMITTEE SUBSTITUTE)

By: Representatives Robinson of the 58th, Evans of the 84th, Harrison of the 20th, Horne of the 104th, Tucker of the 73rd, Childs of the 51st, Butler and Tolbert of the 56th, Hawkins of the 50th, Linder of the 44th, and others

## A BILL TO BE ENTITLED AN ACT

To amend Code Chapter 79A–8, the Georgia Controlled Substances Act, so as to prohibit certain transactions in objects intended primarily for use with narcotic drugs or marijuana; to provide for definitions; to provide for what shall constitute a prima

facie case that an object is drug related; to provide penalties; to provide for severability; to provide an effective date; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

*Section 1.* Code Chapter 79A–8, the Georgia Controlled Substance Act, is hereby amended by inserting between Code Sections 79A–811 and 79A–812 a new Code Section, to read as follows:

"79A–811.1. Transactions in drug-related objects prohibited.

(a) 'Drug-related object' means any instrument, device or object which is primarily intended for one or more of the following purposes:

(1) To inject, ingest, inhale or otherwise introduce into the human body marijuana or controlled substance;

(2) To enhance the effect on the human body of marijuana or a controlled substance;

(3) To test the strength, effectiveness, or purity of marijuana or a controlled substance.

(b) It shall be unlawful for any person ('transferor') to sell, offer to sell, exchange, or offer to exchange any drug-related object to any person but one whom the transferor knows to be authorized by law to possess or have under his control marijuana or a controlled substance for which the object is primarily intended to be used.

(c) Any person who shall violate any provision of this Section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished as for a misdemeanor."

*Section 2.* In the event any section, subsection, sentence, clause or phrase of this Act shall be declared or adjudged invalid or unconstitutional, such adjudication shall in no manner affect the other sections, subsections, sentences, clauses, or phrases of this Act, which shall remain of full force and effect, as if the section, subsection, sentence, clause or phrase so declared or adjudged invalid or unconstitutional were not originally a part hereof. The General Assembly hereby declares that it would have passed the remaining parts of this Act if it had known that such part or parts hereof would be declared or adjudged invalid or unconstitutional.

*Section 3.* This Act shall become effective upon its approval by the Governor or upon its becoming law without his approval.

*Section 4.* All laws and parts of laws in conflict with this Act are hereby repealed.

SENATE BILL 441

By: Senators Stumbaugh of the 55th, Barnes of the 33rd and Thompson of the 32nd

A BILL TO BE ENTITLED AN ACT

To amend Code Chapter 26–99, relating to miscellaneous criminal provisions, as amended, so as to prohibit the sale, delivery, distribution, display for sale or the provision of certain drug-related objects to a minor and to prohibit the possession of such drug-related objects for the aforesaid purposes; to provide for definitions; to provide for certain exceptions; to provide for procedures, requirements and other matters relative to the foregoing; to provide for penalties; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

*Section 1.* Code Chapter 26–99, relating to miscellaneous criminal provisions, as amended, is hereby amended by adding at the end thereof a new code section to be designated Code Section 26–9913 and to read as follows:

"26–9913. *Drug-related Objects.* (a) As used in this Section, unless the context clearly requires otherwise, the following words or terms shall have the following meanings:

(1) 'Dangerous drug' shall have the same meaning as defined in Code Chapter 79A–7, relating to dangerous drugs, as now or hereafter amended.

(2) 'Controlled substance' shall have the same meaning as defined in Code Chapter 79A–8, relating to controlled substances, as now or hereafter amended.

(3) 'Minor' means any unmarried person under the age of 18 years.

(4) 'Drug-related object' means any machine, instrument, tool, equipment, contrivance or device which an average person would reasonably conclude is intended to be used for one or more of the following purposes:

(A) To introduce into the human body any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(B) To enhance the effect on the human body of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(C) To conceal any quantity of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(D) To test the strength, effectiveness or purity of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(5) 'Knowingly' means having general knowledge that a machine, instrument, tool, item of equipment, contrivance or device is a drug-related object or having reasonable grounds to believe that any such object is, or may, to an average person, appear to be, a drug-related object. If any such object has printed thereon or is accompanied by instructions explaining the purpose and use of such object and if following such instructions, would cause a person to commit an act involving the use or possession of a dangerous drug or controlled substance in violation of the laws of this State, then such instructions shall constitute prima facie evidence of knowledge that the object in question is a drug-related object.

(b) Except as otherwise provided by subsection (d) of this Section, it shall be unlawful for any person knowingly to sell, deliver, distribute, display for sale or provide to a minor, or knowingly possess with intent to sell, deliver, distribute, display for sale or provide to a minor any drug-related object.

(c) It shall be unlawful for any minor to falsely represent to any person that such minor is 18 years of age or older with the intent to purchase or otherwise obtain any drug-related object.

(d) No person shall be guilty of violating the provisions of subsection (b) of this Section if:

(1) The person had reasonable cause to believe that the minor involved was 18 years of age or older, because such minor exhibited to such person a driver's license, birth certificate or other official or apparently official document purporting to establish that such minor was 18 years of age or older; or

(2) The person made an honest mistake in believing that the minor was 18 years of age or over after making a reasonable bona fide attempt to ascertain the true age of the minor; or

(3) The person was the parent or guardian of the minor; or

(4) The person was acting in his capacity as an employee or official of any governmental agency or governmental institution or of any public school or other public educational institution or of any bona fide private school, educational institution or health care facility or institution.

(e) Any person who violates the provisions of subsection (b) of this Section shall be guilty of a misdemeanor, for the first offense, and upon conviction thereof shall be punished as for a misdemeanor. For the second or any subsequent offense, a person violating the provisions of said subsection (b) shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than one nor more than five years or by a fine of not less than $1,000 nor more than

$5,000 or by both such fine and imprisonment. Any person violating the provisions of subsection (c) of this Section shall be guilty of a misdemeanor and upon conviction thereof shall be punished as for a misdemeanor."

*Section 2.* This Act shall become effective upon its approval by the Governor or upon its becoming law without his approval.

*Section 3.* All laws and parts of laws in conflict with this Act are hereby repealed.

SENATE BILL 440

By: Senators Stumbaugh of the 55th, Barnes of the 33rd and Thompson of the 32nd

A BILL TO BE ENTITLED AN ACT

To amend Code Chapter 26–99, relating to miscellaneous criminal provisions, as amended, so as to provide for certain restricted drug-related printed material and to prohibit the sale, delivery, distribution, display for sale or the provision of such restricted drug-related printed material to a minor and to prohibit the possession of such restricted drug-related printed material for the aforesaid purposes; to provide for definitions; to provide for certain exceptions; to provide for procedures, requirements and other matters relative to the foregoing; to provide for penalties; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL
ASSEMBLY OF GEORGIA:

*Section 1.* Code Chapter 26–99, relating to miscellaneous criminal provisions, as amended, is hereby amended by adding at the end thereof a new code section to be designated Code Section 26–9912 and to read as follows:

"26–9912. *Restricted Drug-related Printed Material.* (a) As used in this Section, unless the context clearly requires otherwise, the following words or terms shall have the following meanings:

(1) 'Dangerous drug' shall have the same meaning as defined in Code Chapter 79A–7, relating to dangerous drugs, as now or hereafter amended.

(2) 'Controlled substance' shall have the same meaning as defined in Code Chapter 79A–8, relating to controlled substances, as now or hereafter amended.

(3) 'Minor' means any unmarried person under the age of 18 years.

(4) 'Restricted drug-related printed material' means any book, pamphlet, magazine, periodical or other printed matter of a type hereinafter described which, when judged by the standards set forth in subsection (b) of this Section, is detrimental to the health, safety, welfare or morals of a minor, because the book, pamphlet, magazine, periodical or printed item encourages or could reasonably have the effect of encouraging or could reasonably be interpreted as having the purpose of encouraging the commission of an act involving the use or possession of a dangerous drug or controlled substance when such use or possession so encouraged is in violation of the laws of this State. Restricted drug-related printed materials shall include any book, magazine, pamphlet, periodical or other printed item, however produced, which is intended to disseminate information primarily for one or more of the following purposes:

(A) To advocate or recommend the use or possession of a dangerous drug or controlled substance when such use or possession is in violation of the laws of this State.

(B) To advertise, describe, explain, depict or display any method by which a dangerous drug or controlled substance may be obtained or produced when the method so advertised, described, explained, depicted or displayed would lead or could reasonably be expected to lead to the use or possession of such dangerous drug or controlled substance in violation of the laws of this State.

(C) To advertise, describe, explain, depict or display any machine, instru-

ment, tool, equipment, contrivance or device used or intended to be used for one or more of the following purposes:

(i) To introduce into the human body any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(ii) To enhance the effect on the human body of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(iii) To conceal any quantity of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(iv) To test the strength, effectiveness or purity of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(5) 'Knowingly' means having general knowledge that a printed item constitutes restricted drug-related printed material or having reasonable grounds to believe that a printed item constitutes, or may, to a reasonable person, appear to constitute, restricted drug-related printed material.

(b) In order to constitute restricted drug-related printed material for the purposes of subsection (c) of this Section, the book, pamphlet, magazine, periodical or printed item in question, when considered in its entirety in accordance with the prevailing standards of the adult community taken as a whole, must be found to have as its primary purpose the dissemination of information of the kind described by paragraph (4) of subsection (a) of this Section.

(c) Except as otherwise provided by subsection (e) of this Section, it shall be unlawful for any person knowingly to sell, deliver, distribute, display for sale or provide to a minor, or knowingly possess with intent to sell, deliver, distribute, display for sale or provide to a minor any restricted drug-related printed material.

(d) It shall be unlawful for any minor to falsely represent to any person that such minor is 18 years of age or older with the intent to purchase or otherwise obtain any restricted drug-related printed material.

(e) No person shall be guilty of violating the provisions of subsection (c) of this Section if:

(1) The person had reasonable cause to believe that the minor involved was 18 years of age or older, because such minor exhibited to such person a driver's license, birth certificate or other official or apparently official document purporting to establish that such minor was 18 years of age or older; or

(2) The person made an honest mistake in believing that the minor was 18 years of age or over after making a reasonable bona fide attempt to ascertain the true age of the minor; or

(3) The person was the parent or guardian of the minor; or

(4) The person was acting in his capacity as an employee or official of any governmental agency or governmental institution or of any public school or other public educational institution or of any bona fide private school, educational institution or health care facility or institution.

(f) Any person who violates the provisions of subsection (c) of this Section shall be guilty of a misdemeanor, for the first offense, and upon conviction thereof shall be punished as for a misdemeanor. For the second or any subsequent offense, a person violating the provisions of said subsection (c) shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than one nor more than five years or by a fine of not less than $1,000 nor more than $5,000 or by both such fine and imprisonment. Any person violating the provisions of subsection (d) of this Section shall be guilty of a misdemeanor and upon conviction thereof shall be punished as for a misdemeanor."

375

*Section 2.* This act shall become effective upon its approval by the Governor or upon its becoming law without his approval.

*Section 3.* All laws and parts of laws in conflict with this Act are hereby repealed.