**HIGH OL' TIMES, INC., et al.,**
**Plaintiffs-Appellants,**

v.

**George BUSBEE, Governor of Georgia,**
**et al., Defendants-Appellees.**

**No. 78–2192.**

United States Court of Appeals,
Fifth Circuit.

July 9, 1980.

---

Reber Boult, Atlanta, Ga., for plaintiffs-appellants.

Arthur K. Bolton, Atty. Gen., Robert Stubbs, II, Atlanta, Ga., George P. Dillard, Decatur, Ga., for George Busbee, Arthur Bolton, Hinson McAuliffe, Thomas Charran, Herbert Rivers & Robert T. Johnston.

County Atty., Decatur, Ga., John C. Walden, G. Stephen Parker, Asst. Attys. Gen., Daryl A. Robinson, Staff Asst. Atty. Gen., Atlanta, Ga., for John R. Thompson & Randall Peek.

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal[1] arises from a multifarious challenge to the constitutionality of two newly-enacted Georgia statutes which purport to proscribe the sale, exchange or offer of so-called drug paraphernalia. Appellants' motion for a temporary restraining order was denied and the district court abstained from reviewing the statutes, finding that an authoritative interpretation by the Georgia Supreme Court might clarify any vagueness and render constitutional adjudication unnecessary. In so doing, the court abused its discretion; we therefore

---

1. Although the district court order of April 14, 1978, characterizes this case as a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), see High Ol' Times, Inc. v. Busbee, 449 F.Supp. 364, 369 (N.D.Ga.1978), the decision is appealable as of right under 28 U.S.C. § 1292(a)(1) by virtue of the subsequent district court denial on May 10, 1978, of appellants' motion for a preliminary injunction.

reverse and remand with directions to entertain the claims raised in appellants' amended complaint.

Appellants, with the exception of one wholesaler, are numerous small thinly capitalized Georgia shopowners whose primary operations involve the sale of various "novelty" items. Their inventories include, for example, ornate pipes, rolling papers, spoons, screens, testing kits, scales, posters, clips, mirrors and literature (for example, *High Times* and *Head* magazines). Defendants-appellees are several state officials charged with the execution of Georgia laws.

2. Ga.Code Ann. §§ 79A–811.1 and 26–9913, which are the only two at issue in this appeal, *see* note 3 *infra*, are as follows:

**79A–811.1 Transactions in drug-related objects prohibited**

(a) "Drug-related object" means any instrument, device or object which is primarily intended for one or more of the following purposes:

(1) To inject, ingest, inhale or otherwise introduce into the human body marijuana or a controlled substance;

(2) To enhance the effect on the human body of marijuana or a controlled substance;

(3) To test the strength, effectiveness, or purity of marijuana or a controlled substance.

(b) It shall be unlawful for any person ("transferor") to sell, offer to sell, exchange, or offer to exchange any drug-related object to any person but one whom the transferor knows to be authorized by law to possess or have under his control marijuana or a controlled substance for which the object is primarily intended to be used.

(c) Any person who shall violate any provision of this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished as for a misdemeanor.

**26–9913 Drug-related objects**

(a) As used in this section, unless the context clearly requires otherwise, the following words or terms shall have the following meanings:

(1) "Dangerous drug" shall have the same meaning as defined in Code Chapter 79A–7, relating to dangerous drugs, as now or hereafter amended.

(2) "Controlled substance" shall have the same meaning as defined in Code Chapter 79A–8, relating to controlled substances, as now or hereafter amended. For the purposes of this section, the term controlled substance shall include marijuana as defined by subsection (*o*) of Code section 79A–802 of said Code Chapter 79A–8.

A growing concern among Georgia legislators that these novelty items are in reality nothing more than objects which either facilitate or advocate the use of illicit controlled substances led to three enactments which amended the Georgia Controlled Substances Act and the Criminal Code of Georgia. Ga.Code Ann. § 79A–811.1 prohibits the sale, exchange or offer of "drug-related objects" to anyone; Ga.Code Ann. § 26–9913 prohibits the sale or provision of such objects to minors; and Ga.Code Ann. § 26–9912 prohibits the sale or provision to minors of any "restricted drug-related printed material." [2]

(3) "Minor" means any unmarried person under the age of 18 years.

(4) "Drug-related object" means any machine, instrument, tool, equipment, contrivance or device which an average person would reasonably conclude is intended to be used for one or more of the following purposes:

(A) To introduce into the human body any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(B) To enhance the effect on the human body of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(C) To conceal any quantity of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(D) To test the strength, effectiveness or purity of any dangerous drug or controlled substance under circumstances in violation of the laws of this State.

(5) "Knowingly" means having general knowledge that a machine, instrument, tool, item of equipment, contrivance or device is a drug-related object or having reasonable grounds to believe that any such object is, or may, to an average person, appear to be, a drug-related object. If any such object has printed thereon or is accompanied by instructions explaining the purpose and use of such object and if following such instructions would cause a person to commit an act involving the use or possession of a dangerous drug or controlled substance in violation of the laws of this State, then such instructions shall constitute prima facie evidence of knowledge that the object in question is a drug-related object.

(b) Except as otherwise provided by subsection (d) of this section, it shall be unlawful for any person knowingly to sell, deliver, distribute, display for sale or provide to a minor, or knowingly possess with intent to

Appellants commenced this action under 42 U.S.C. § 1983 immediately after the bills were signed into law on April 10, 1978, by appellee Governor Busbee, seeking declaratory and injunctive relief. They contended that the statutes are facially repugnant to the United States Constitution under Art. I, § 8, cl. 3 (commerce clause); Art. I, § 9, cl. 3 (bill of attainder); Art. VI, cl. 2 (supremacy clause); the First, Fifth, Ninth and Fourteenth Amendments. Federal jurisdiction was premised on 28 U.S.C. §§ 1331, 1343(3) and 1343(4).

On April 11, 1978, the district court held a hearing on appellants' motion for a temporary restraining order, and after arguments by counsel for both sides, the court denied the motion as to §§ 79A–811.1 and 26–9913. However, the court granted the temporary restraining order with respect to § 26–9912.[3] *High Ol'Times v. Busbee*, 449 F.Supp. 364, 370 (N.D.Ga.1978). The court

abstained from considering the merits of appellants' challenge to §§ 79A–811.1 and 26–9913 on the grounds that the Supreme Court of Georgia had not yet had an opportunity to interpret the statutes. It reasoned that the statutes' vagueness might be removed by a saving construction, thus "'avoid[ing] in whole or in part the necessity for federal constitutional adjudication, or at least materially change[ing] the nature of the problem.'" *High Ol' Times, Inc. v. Busbee, supra,* 449 F.Supp. at 369, *quoting Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152, 1158 (1959). It is from the district court's decision to abstain that the present appeal is taken.

■ The decision whether or not to abstain is one of discretion,[4] hence the sole issue to be resolved on this appeal is whether the learned trial judge abused his discretion by abstaining from considering the

---

sell, deliver, distribute, display for sale or provide to a minor any drug-related object.

(c) It shall be unlawful for any minor to falsely represent to any person that such minor is 18 years of age or older with the intent to purchase or otherwise obtain any drug-related object.

(d) No person shall be guilty of violating the provisions of subsection (b) of this section if:

(1) The person had reasonable cause to believe that the minor involved was 18 years of age or older, because such minor exhibited to such person a driver's license, birth certificate or other official or apparently official document purporting to establish that such minor was 18 years of age or older; or

(2) The person made an honest mistake in believing that the minor was 18 years of age or over after making a reasonable bona fide attempt to ascertain the true age of the minor; or

(3) The person was the parent or guardian of the minor; or

(4) The person was acting in his capacity as an employee or official of any governmental agency or governmental institution or of any public school or other public educational institution or of any bona fide private school, educational institution or health care facility or institution; or, the person was acting in his capacity as a registered pharmacist or veterinarian, or under the direction of a registered pharmacist or veterinarian, to sell said object for a legitimate medical purpose.

(e) Any person who violates the provisions of subsection (b) of this section shall be guilty of a misdemeanor, for the first offense,

and upon conviction thereof shall be punished as for a misdemeanor. For the second or any subsequent offense, a person violating the provisions of said subsection (b) shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than one nor more than five years or by a fine of not less than $1,000 nor more than $5,000 or by both such fine and imprisonment. Any person violating the provisions of subsection (c) of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished as for a misdemeanor.

**3.** For the challenge to Ga.Code Ann. § 26–9912, the court ordered the subsequent hearing on the motion for a preliminary injunction consolidated with the hearing on the merits, pursuant to Fed.R.Civ.P. 65(b). The court ultimately granted a permanent injunction against the enforcement of § 26–9912 on First Amendment grounds, from which a separate appeal was taken. *High Ol' Times, Inc. v. Busbee,* 456 F.Supp. 1035 (N.D.Ga.1978), *aff'd per curiam, High Ol' Times, Inc. v. Busbee,* No. 79–3514, 621 F.2d 141 (5th Cir. July 9, 1980).

**4.** *See Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). The Supreme Court there noted that "[i]n applying the doctrine of abstention, a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law." *Id.* at 534, 85 S.Ct. at 1181, 14 L.Ed.2d at 55.

merits of appellants' constitutional challenges. However, before reaching that question we must satisfy ourselves that appellants have met the Article III requirement of an actual controversy.

In *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Supreme Court, while deciding that the availability of declaratory relief in a federal challenge to a state criminal statute was not precluded merely because the plaintiff had not made the required showing for injunctive relief, found that so long as the threats of prosecution are not imaginary, speculative or chimerical, the plaintiff has demonstrated the existence of an Article III controversy. *Id.* at 459, 94 S.Ct. at 1215, 39 L.Ed.2d at 514, *citing Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *and Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). Further, the Court stated that the concurrent availability of state declaratory relief was immaterial: "[W]e do not require petitioner first to seek vindication of his federal rights in a state declaratory judgment action . . ." 415 U.S. at 475 n. 22, 94 S.Ct. at 1224 n. 22, 39 L.Ed.2d at 524 n. 22. *See Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 510, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257, 268 (1972) (availability of state declaratory relief on plaintiff's federal claims wholly beside the point); *see also Septum, Inc. v. Keller*, 614 F.2d 456, 458–59 (5th Cir. 1980). Thus, in the present case, the Article III requirement is satisfied, notwithstanding Ga.Code Ann. § 110–1101 (declaratory judgment statute), so long as appellants have demonstrated a genuine threat of imminent prosecution. The record clearly shows, and the appellees have openly admitted, that the statute will be enforced against appellants to the fullest extent possible. "In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson, supra,* 415 U.S. at 459, 94 S.Ct. at 1216, 39 L.Ed.2d at 514. Appellants have a live controversy.

Since it cannot be questioned that the district court's subject matter jurisdiction was properly invoked under 28 U.S.C. §§ 1343(3) and (4), without regard to any amount in controversy, *see Douglas v. City of Jeannette*, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, *reh. denied*, 319 U.S. 782, 63 S.Ct. 1170, 87 L.Ed. 1726 (1943), our remaining task is to review the propriety of the district court's abstention.

Fundamental abstention analysis in the context of a federal constitutional claim against state officials begins with *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* establishes three factors for the district court to consider in deciding whether or not to abstain: 1) whether the disposition of a question of state law involved in the case can eliminate or narrow the scope of the federal constitutional issue; 2) whether the state law question presents difficult, obscure or unclear issues of state law; and 3) whether a federal decision could later conflict with subsequent state court resolutions concerning the same regulatory program or scheme, thus engendering more confusion. It must also be borne in mind, however, that abstention is a judicially-created doctrine and is severely circumscribed to constitutional challenges posing "special circumstances." *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444, 450 (1967). Abstention is therefore the exception rather than the rule, *see Zwickler v. Koota, supra; Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), and should be applied only when the court is convinced that at least one of the *Pullman* factors is present. Moreover, once the district court's jurisdiction has been properly invoked, the application of abstention only serves to deny the plaintiff his guaranteed federal forum for adjudication of his constitutional rights, thus conflicting with the duty imposed by Congress on all levels of the federal judiciary to respect the suitor's choice of forum. *Zwickler v. Koota, supra*, 389 U.S. at 248, 88 S.Ct. at 395, 19 L.Ed.2d at 450.

Turning to the first factor considered in *Pullman, supra,* one of appellants' challenges was that the statutes suffer the vagueness malady in that they provide no fair notice of the precise conduct proscribed. Moreover, the statutes are alleged to lack any guidance as to the intent element required in order to violate either one of them. The district court declined, however, to examine further any of appellants' other constitutional challenges; its decision to abstain was based on the above vagueness challenge only. Considering for a moment that issue alone, we have serious doubts that a saving construction exists which would eliminate the vagaries of either of these statutes.[5] Nevertheless, appellees strenuously argue that abstention was proper since the state court never had an opportunity to construe the statute. However, "[i]f the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." *Harman v. Forssenius, supra,* 380 U.S. at 534–35, 85 S.Ct. at 1182, 14 L.Ed.2d at 55, *citing Baggett v. Bullitt, supra,* 377 U.S. at 375–79, 84 S.Ct. at 1324–26, 12 L.Ed.2d at 387–89.[6]

■ We believe that such is the case here; a state court interpretation of the statutes would neither render unnecessary nor substantially modify the federal constitutional question. Appellants presented several other non-frivolous challenges to the constitutionality of these two statutes, one of which involves a substantive due process attack that there is no rational relation between the legitimate state interest of curbing illicit drug abuse and the means adopted to accomplish that end, the paraphernalia law. Additionally, appellants alleged that the statutes violate equal protection guarantees by arbitrarily and capriciously discriminating against unmarried persons under eighteen years of age; that the statutes would be discriminatorily enforced against them and thus unconstitutional as applied; and that the definition of drug-related objects is arbitrary and capricious (*e. g.,* pipes would be proscribed whereas cigarette rolling papers would not). Stated plainly, there were several federal constitutional questions presented which would remain unanswered and unresolved *even if* the Georgia Supreme Court would interpret away any vagueness inherent in §§ 79A–811.1 and 26–9913.[7] Since federal

---

**5.** Appellees offered no interpretation whatsoever and the district court's suggestion, 449 F.Supp. at 368 n. 3, appears unlikely. "We have frequently emphasized that abstention is not to be ordered unless the state statute is of an uncertain nature, and is *obviously* susceptible of a limiting construction." *Zwickler v. Koota,* 389 U.S. 241, 251 n. 14, 88 S.Ct. 391, 397 n. 14, 19 L.Ed.2d 444, 451 n. 14 (1967) (emphasis supplied). *Cf. Steffel v. Thompson,* 415 U.S. 452, 474–75 n. 21, 94 S.Ct. 1209, 1223 n. 21, 39 L.Ed.2d 505, 523–24 n. 21 (1974) ("Abstention . . . might be more appropriate when a challenge is made to the state statute as applied, rather than upon its face, since the reach of an uncertain state statute might, in that circumstance, be more susceptible of a limiting or clarifying construction that would avoid the federal constitutional question.")

**6.** *See also* Note, *Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era,* 80 Harv.L.Rev. 604 (1967), where the commentator notes several inherent doctrinal difficulties that arise when abstention is applied. In the vagueness area, it is noted that:

> The delay caused by abstention seems especially inappropriate in "fair notice" vagueness cases. The void-for-vagueness concept of due process requires that the state define precisely the limits of a statutory prohibition so that would-be violators receive "fair notice." Abstention, on the other hand, would allow the state to continue to enforce a vague statute while its courts tried to work out the statute's meaning with sufficient definiteness. The federal courts would not decide whether the statute as it then appeared on the books was unconstitutionally vague until the state clearly settled on a particular set of verbal formulas.
>
> *Id.* at 613.

**7.** *Cf. Record Head, Inc. v. Olson,* 476 F.Supp. 366, 370 (D.N.D.1979) (plaintiff challenged the definition of paraphernalia within the statute; the court noted that even if the statute were to be construed by state courts as requiring an unlawful intent on the part of the seller, such a construction would not avoid in whole or in part the due process question of the definition of paraphernalia).

constitutional issues remain, the first factor in *Pullman* is not present in this case.

Regarding the second and third *Pullman* factors, the short answer is that they are not present either. As we noted above, the issues here are all questions of federal constitutional law; there simply are no difficult, obscure or unclear issues of state law. Similarly, there is no ongoing state scheme or regulatory program involved here such that a federal ruling might engender confusion; the criminal statutes will either stand or fall.[8] Thus, the *Pullman* factors articulated by the Supreme Court which militate in favor of abstention are absent. The district court therefore abused its discretion when it abstained from considering appellants' challenges to the constitutionality of the two statutes, Ga.Code Ann. §§ 79A–811.1 and 26–9913.

In conclusion, we emphasize that our decision is not intended to dissuade the Georgia Legislature from trying to get a handle on the burgeoning problem of illicit drug use by its young people. Such legislative attempts are of course laudable, and, as even appellants admit, a narrowly drawn statute accomplishing such a goal is well within the state's police power.[9] What we hold today is simply that the appellants have a right to adjudicate in a federal forum their constitutional challenges to the two statutes. Accordingly, the district court's order is reversed and remanded for proceedings consistent with the foregoing opinion.[10]

REVERSED and REMANDED.

---

8. *But cf. Houseworth v. Glisson*, 614 F.2d 1295 (5th Cir. 1980) (per curiam), *aff'g* 485 F.Supp. 29 (N.D.Ga.1978) (injunction granted against paraphernalia control ordinance implemented through local regulation of small business licenses).

9. There has been a recent proliferation of drug paraphernalia legislation cases reaching the federal courts, all with a similar consensus; the courts have not abstained, and where the merits have been reached, the statutes have not generally weathered the attacks. *See Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J. 1980); *Indiana Chapter, National Organization for the Reform of Marijuana Laws v. Sendak*, No. TH 75–142–C (S.D.Ind. Feb. 4, 1980) (three-judge court); *Weingart v. Town of Oyster Bay*, No. 79 C–2932 (E.D.N.Y. Dec. 17, 1979); *Record Museum v. Lawrence Township*, 481 F.Supp. 768 (D.N.J.1979); *Record Head, Inc. v. Olson*, 476 F.Supp. 366 (N.D.1979); *Santilli v. Hamilton Township*, Civ. No. 79–1301 (D.N.J. June 1, 1979); *Riddle v. Clack*, No. CA–3–77–0525 D (N.D.Tex. Aug. 25, 1977).

Not all of the statutes have been invalidated on the same grounds, of course, nor were all of the statutes identically worded. However, in closing, the following language seems worthy of note: "The public interest in protecting constitutional rights is at least as strong as limiting the proliferation of the types of devices to which the ordinances speak." *Santilli v. Hamilton Township, supra*, memo. op. at 3.

10. While the case was under submission, the defendant appellee Governor Busbee signed into law on March 31, 1980, Act No. 1307, amending 1978 Ga.Laws 2237, Ga.Code Ann. § 79A–811.1, which is designed to focus solely on the intent of the seller. What effect, if any, this may have on the challenges raised in appellants' amended complaint is for future adjudication.