HIGH OL' TIMES, INC., et al.

v.

George BUSBEE, Governor of Georgia, et al.

Civ. A. No. 78–628 A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 12, 1978.

Reber Boult, Atlanta, Ga., for plaintiffs.

G. Stephen Parker, Atlanta, Ga., for Busbee, Bolton, McAuliffe & Johnston.

Thomas Charron, Dist. Atty., Cobb County Circuit, Marietta, Ga., George Dillard, County Atty., Dekalb County, Decatur, Ga., Herb Rivers, Sol. Gen., State Court of Cobb County, Marietta, Ga., Hinson McAuliffe, Sol. Gen., State Court of Fulton County, Atlanta, Ga., Robert G. Johnston, Sol. Gen., State Court of Muscogee County, Columbus, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action challenging the constitutional validity of three recently enacted Georgia statutes, the so-called "Head Shop Acts:" (1) Ga.Code § 79A–811.1, outlawing the sale or offer of "drug-related objects;" (2) Ga.Code § 26–9913, prohibiting the sale or offer of "drug-related objects" to minors; and (3) Ga.Code § 26–9912, proscribing the sale or display of "restricted drug-related printed material" to minors. Plaintiffs are vendors, distributors, and potential customers of the head shop trade. The sellers purport to represent the interest their minor customers hold in the free flow of drug-related information. *See Craig v. Boren*, 429 U.S. 190, 195, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). The court in our orders entered April 14, 1978, *High Ol' Times, Inc. v. Busbee*, 449 F.Supp. 364 (N.D.Ga.1978), and May 9, 1978, denied plaintiffs' request for temporary injunctive relief on grounds of abstention as to two of the challenged statutory provisions: Ga.Code §§ 79A–811.1 and 26–9913. Plaintiffs thereupon filed notice of an interlocutory appeal, 28 U.S.C. § 1292(a)(1), of our denial of a preliminary injunction to enforcement of the two "drug-related objects" statutes.

On May 3, 1978, the court convened a hearing on plaintiffs' preliminary and permanent injunction requests, Rule 65(a)(2), Fed.R.Civ.P., as to the one challenged statute remaining within our jurisdiction, Ga. Code § 26–9912, restricting drug-related printed materials. At the hearing the court granted defendants leave to supplement the record with documentary evidence and the defendants agreed to restrain enforcement of the printed materials act pending a decision on the request for injunctive and declaratory relief. The record is now complete and the court may rule on the constitutionality of Ga.Code § 26–9912.

The court will begin our review with a statement of the parties' contentions. This statement will be followed by a brief presentation of the disputed statute and a marshalling of the evidence presented. Next, in order to choose the applicable standard of review, we will determine whether the statute restricts speech protected by the First Amendment. If protected speech is infringed, the court will then apply a chosen standard of review weighing the competing interests of the state, on the one side, and the interests of the vendors and their minor customers, on the other.

## CONTENTIONS OF THE PARTIES

Plaintiffs raise myriad constitutional challenges to the restriction of printed material, but primarily assail its allegedly impermissible vagueness and facial overbreadth in light of First Amendment guarantees. Defendants contend: (1) that various possible constructions of the statute require the federal court to abstain in its constitutional review; (2) that the statute does not compromise First Amendment protection because: (i) no prior restraints are imposed; (ii) stringent regulation and control of communicative material to minors is allowable; and (iii) the exercise of police power in this instance strengthens the parent-child relationship; and (3) that the act is not overbroad as it merely restricts sales of a certain kind of literature to minors. The court need not reconsider defendants' abstention contentions as nothing has been presented herein which was not previously argued and decided adversely to defendants in our order of April 14, 1978. *High Ol' Times, Inc. v. Busbee, supra* at 369–70.

## GA.CODE § 26–9912 and the EVIDENCE PRESENTED

Ga.Code § 26–9912, which has been set out in full in the court's previous order, *High Ol' Times, Inc. v. Busbee, supra* at 372 (Appendix), makes it a misdemeanor "to sell, deliver, distribute, display for sale or provide to a minor. . . ." or to possess with intent to transfer to a minor, any restricted drug-related printed material. A minor may also be punished as a misdemeanant for misrepresenting his age in order to purchase or obtain this material. "Restricted drug-related printed material" is defined as any printed matter:

> which is intended to disseminate information primarily for one or more of the following purposes: (A) To advocate or recommend the use or possession of a dangerous drug or controlled substance . . . (B) To advertise, describe, explain, depict or display any method by which a dangerous drug or controlled substance may be obtained or produced . . . (C) To advertise, describe, explain, depict or display any machine, instrument, tool, equipment, contrivance or device . . . to introduce into the human body . . . to enhance the effect on the human body . . . to conceal any quantity . . . [or] to test the strength, effectiveness or purity of any dangerous drug or controlled substance . . . .

Ga.Code § 26–9912(a)(4).

The banned material is regarded in the act as detrimental to the health, safety, welfare, or morals of minors. The restricted printed material is to be selected and identified "in accordance with the prevailing standards of the adult community taken as a whole . . . ." Ga.Code § 26–9912(b).

Plaintiffs have entered into evidence a series of exhibits from the vendors' shops which they fear may fall within the statute's ambit: (1) books: W. Mortimer, *The History of Coca* (1974); W. Drake, *The Connoisseur's Handbook of Marijuana* (1971); and C. Baker, *Physicians' Desk Reference* (32d ed. 1978); (2) magazines: High Times, Aug. 1977; Head, Mar. 1978; Newsweek, May 30, 1977 at 20 (special article, "Cocaine Out of Control"); and N.Y. Times, Dec. 18, 1977, § 6 at 15 (magazine cover story, "Behind America's Marijuana High"); and (3) poster: "Marijuana The Assassin of Youth." The plaintiffs have also elicited testimony on the record of local head shop proprietors, a representative of a national distributor to head shops, and a publisher of a head shop trade magazine. The witnesses' testimony focused on the issue of irreparable harm but also included a description of the trade and wares of the threatened businesses. Defendants have tendered one book and two magazines as evidence: C. Darth, *The Whole Drug Manufacturers Catalog* (1977); High Times, Sept. 1977 and April 1978, as examples of material which the statute is intended to proscribe.

The books and magazines generally exalt drugs and hawk the appurtenances of drug use. Defendants seek to highlight the September 1977 High Times' centerfold, at 56–57, a school lunch box purportedly filled with marijuana, the April 1978 High Times' guide to the "Best Smuggling Vehicles," at 60, and the *Catalog*'s "Kitchen Chemistry and Bathtub Dope Section," at 60. Defendants contend that this material exemplifies the publishers' alleged intent to seduce juveniles into illegal drug use and possession. In these same exhibits, however, plaintiffs find articles on electronic surveillance, April 1978 High Times, at 40, and the economic impact of illicit drug traffic in the United States, *id.* at 45. The court's review of the April 1978 High Times, as an example chosen by both sides, discloses: (1) a smattering of special articles, such as "Outlaw Strongholds in Columbia," at 35 (the history and present times of the Guajira peninsula and its people) and "The Last Run," at 55 (a smuggling expedition ending in capture and conviction of the smugglers); (2) a list of regular features, such as record and book reviews, drug market price and quantity quotations, and a digest of recent court rulings in controlled substances and Fourth Amendment cases; and (3) a wealth of advertisements for such items as, rolling papers, water pipes, and tee-shirts, and for

such groups as, NORML (National Organization for the Reform of Marijuana Laws), at 72. It is noted that the NORML ad encourages the readers to write to their United States Senators, Representatives, and President urging a change in the present drug laws and penalties.

## WHETHER THE RESTRICTED PRINT-ED MATERIAL INCLUDES "PROTECTED SPEECH"

 If the disputed material is not protected by the First Amendment, the state has nearly free rein to regulate and control its publication and distribution. If, however, even a portion of the purportedly restricted material enjoys constitutional protections, the state as a rule may only limit its publication under the most compelling circumstances, *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), and with the least restrictive interference, *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). If the statutory restriction sweeps protected speech within its proscriptions, the restriction is impermissibly overbroad on its face. *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

 Traditional First Amendment analysis teaches: that constitutional protection is presumed; that the exceptions to protection are few in number; and that the state bears the burden of proving that a particular exception is applicable. *Speiser v. Randall*, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The fact that this challenged penal statute imposes broad prior restraints on distribution of drug-related printed material[1] renders it especially sus-

pect and presumedly invalid, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The recognized exceptions to constitutionally guaranteed speech include: (1) obscene material, *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); (2) fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); (3) defamation, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); (4) intolerable invasions of privacy, *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1973); (5) disruptions of the classroom, *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); (6) incitement to imminent lawless activity, *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); and (7) solicitation of illegal activity, *Pittsburgh Press Co. v. Pittsburgh Commission on Human Rights*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). *See Cohen v. California*, 403 U.S. 15, 24, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Mississippi Gay Alliance v. Goudelock*, 536 F.2d 1073, 1078–79 (5th Cir. 1976) (Goldberg, J., dissenting) [lists of exceptions to the First Amendment's coverage]. The state, if not directly, then by implication, has attempted to characterize the statutorily restricted material under three of the enumerated exceptions.

 By its application of one prong of the *Miller* obscenity standard and by its arguments of lower threshold review for publication to juveniles, *see Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); *Erznoznik v. Jacksonville, supra*, the state has signalled that the

---

1. The state has argued that no prior restraints have been imposed because the publication of the material has not been restrained, only the sale of the material to minors has been proscribed. The state's argument is not at all persuasive in light of *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In *Bantam Books*, the Court found that although an informal commission, created by state statute, had merely identified which materials it found "objectionable" for sale to juveniles, in actuality, the effect of the Commission's actions had been to ban all sales and

to curtail any distribution of the materials. Such an absolute proscription of merely "objectionable" materials amounted to an impermissible prior restraint on protected expression. Under the instant circumstances there is no indirection in the state's approach. The ruling of *Bantam Books* applies with equal, if not greater force, to Ga.Code, § 26–9912, a criminal statute outlawing a new sort of "objectionable" printed matter. Therefore, it must be conceded that the state has priorly restrained any protected expression which might be contained in Drug-Related Printed Material.

obscenity exception may exempt "Restricted Drug-Related Printed Material" from First Amendment protections. The statutory definition of what constitutes restricted material includes proscriptive language apparently taken from the *Miller* standard: "when considered in its entirety in accordance with the prevailing standards of the adult community taken as a whole. . . ." Ga.Code § 26–9912(b). In an attempt to save its "inapposite" choice of a standard, *see High Ol' Times, Inc. v. Busbee, supra* at 369, the state argues that the language "appears to be no more than an attempt to provide a 'reasonable man' standard in judging . . . materials offered for sale. . . ." Brief of the Attorney General, filed May 24, 1978, at 6 n. 4. In its struggle to avoid impending invalidation, the state has clutched at the wrong straw, a tort standard of care, as support for its challenged criminal statute. The obscenity exception is clearly inapplicable in this instance. Because the material is not even argued to be obscene, the lower threshold of obscenity when publication and distribution is to minors, *see Ginsburg v. New York, supra,* is also not applicable.

A second proposed exception, for material which is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action . . . ," *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), is similarly unavailing. If the material is mere advocacy of illegal action at some future time, it may not be criminally proscribed by the state. *Noto v. United States,* 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). The call to action must foment imminent lawless conduct. *Hess v. Indiana,* 414 U.S. 105, 108–09, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973). The threat from such incitement must be seen as posing a clear and present danger. *Krause v. Rhodes,* 570 F.2d 563, 571 (6th Cir. 1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978). Reasonable minds could not differ, the requisite seriousness of threat and imminence of action are not presented in any of the sample material entered into evidence. The defendant has not offered and the court has not found any instance when the written word, unassociated with any disruptive conduct, has met this grave test. *E. g., Bridges v. California,* 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). The test of "inciting or producing imminent lawless action" in *Brandenburg v. Ohio, supra,* is simply not satisfied by the plaintiffs' sale or display of the books, magazines, and posters exemplified herein. This second proposed exception to First Amendment protections must be denied.

The final possible exception, that for direct solicitation of unlawful activity, is also unavailable. In *Pittsburgh Press Co. v. Pittsburgh Commission on Human Rights, supra,* the newspaper's discriminatory help wanted ad solicited violation of the city's equal employment ordinance. *See also United States v. Hunter,* 459 F.2d 205 (4th Cir. 1972), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1973) [rental ad solicited violation of equal housing code]. As advertising employment availability was one step in the hiring process, the newspaper ad may be viewed as aiding in the attempted violation of the ordinance. The Court in *Pittsburgh Press* cautiously distinguished what is and what is not protected: "Help Wanted Female" and "Narcotics for Sale" are not protected speech, 413 U.S. at 388, 93 S.Ct. 2553, while comment or controversy on the equal employment ordinance, its enforcement, ambit, or propriety are clearly guaranteed, at 391, 93 S.Ct. 2553. Similarly, printed matter either assailing the state's controlled substances laws or extolling the attractions of certain unlawful substances and glorifying the drug culture may not be generally restricted.

Even if this state's companion statutes outlawing "drug-related objects" were ultimately upheld, advertisements of the availability of such objects in other states where they have not been proscribed could not be stifled. In *Bigelow v. Virginia,* 421 U.S. 809, 824, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), the State of Virginia sought to ban

local newspaper ads announcing the availability of abortions in New York. At the time of the prosecution abortions were illegal in Virginia but legal in New York. The state conviction of Bigelow, the newspaper editor, for publishing the ad of a New York abortion clinic was overturned by the Court.

A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State. It may seek to disseminate information so as to enable its citizens to make better informed decisions when they leave. But it may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State.

at 824–825, 95 S.Ct. at 2334. This final exception to First Amendment protection is therefore inapplicable even if Ga.Code §§ 79A–811.1 and 26–9913 are upheld.

▮▮▮ Having failed to identify an exception to First Amendment guarantees, the court concludes that portions, if not all, of the purportedly Restricted Drug-Related Printed Material must be considered protected speech. The court is assured in this conclusion when the array and substance of the material in evidence is reviewed: books, magazines, and a poster touting variant styles, products and ideologies. Although in the court's mind the material often seems distasteful and its hawkers seldom appear admirable, the First Amendment's expanse by necessity includes speech which is aberrant, unpopular, and even revolutionary. *NAACP v. Button,* 371 U.S. 415, 444–45, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). The challenged statute's proscriptive sweep is thus impermissibly overbroad. *Zwickler v. Koota, supra.* The only possible salvaging of Ga.Code § 26–9912 by the state is a demonstration: (1) of some reasonable limitations on its scope and

enforcement under restricted circumstances, *see Tinker v. Des Moines Independent Community School District, supra; Shelton v. Tucker, supra* ; or (2) of some accommodation of an important competing state interest to be served, *see Ealy v. Littlejohn,* 569 F.2d 219 (5th Cir. 1978) [accommodation of First Amendment rights and grand jury investigative powers]. *Cf. Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (plurality decision) [accommodations of state's interest in protecting its children and the minors' right to privacy].

## CONSTITUTIONALITY OF GA.CODE § 26–9912

▮▮▮ In order to determine the constitutionality of the statutory restriction on the transfer of certain printed material to minors, the court must select and apply the appropriate standard of reviewing the state's exercise of its power. A scale of onerous to lighter burdens of proof may be applied and the state may be forced to demonstrate either (1) a compelling interest which allows reasonable regulation in special circumstances, *Tinker v. Des Moines Independent Community School District, supra; Shanley v. Northeast Independent School District,* 462 F.2d 960, 974–78 (5th Cir. 1962), or (2) a significant interest coupled with a proof that the restriction imposed serves such interest, *Planned Parenthood of Central Missouri v. Danforth; Carey v. Population Services International, supra.* The first proof assumes that the minors' rights are congruent with those of the adult population, *Tinker, supra,* 393 U.S. at 515, 89 S.Ct. 733 (Stewart, J., concurring), and the second applies the standard used in accommodating the state's interests and the minors' rights previously applied only in right to privacy actions.[2] Neither proof is

---

**2.** The analogy between free expression and the right to privacy decisions is easily drawn. The right to privacy was found in the penumbras of several constitutional protections, including

and most especially, the First Amendment freedoms of speech and association. *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The preeminence of the

certain or perfect, but if a choice were necessary the court would apply the compelling state interest test to this restriction of minors' First Amendment rights. However, in this instance the court need not choose between the standards as either results in invalidation of Ga.Code § 26–9912. The two choices of standards will therefore be introduced and applied in our consideration of the statute.

To begin our review of both standards, we note that it has been declared that "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Central Missouri v. Danforth, supra,* 428 U.S. at 76, 96 S.Ct. 2831, 2843. In particular, minors have been held to possess First Amendment rights. *Tinker v. Des Moines Independent Community School District, supra.* See Note, *The Supreme Court, 1968 Term,* 83 Harv.L.Rev. 154, 158 (1969). In this instance, the minors' First Amendment interest, as asserted on their behalf by the head shop tradespeople, *Craig v. Boren, supra,* 429 U.S. at 195, 97 S.Ct. 451; *Eisenstadt v. Baird,* 405 U.S. 438, 443–46, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), is in unrestricted access to drug-related printed material.

The minors' interest, however, does not exist in a vacuum. In this case, a competing interest is posed by the state's legitimate concern for the welfare of its children. *Prince v. Massachusetts,* 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090 (1944). In *Prince* a legal guardian was convicted for violation of the state labor laws for furnishing the child with religious literature for sale on the public streets. The court upheld the state child labor statutes as properly protective of the child's welfare in conflict with the asserted individual freedoms of speech and religion and rights of parents to raise their children as they deem fit. The state's power to control the conduct of its children

First Amendment and the added protections which it demands, *see NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *West Virginia State Board of Education*

was found to extend beyond the reach of its power over its adult citizens. The Georgia legislature has expressed its concern for its juvenile population in Ga.Code § 26–9912 which purports to restrict access to material which "is detrimental to the health, safety, welfare and morals of a minor. . . ." The state's interest in protecting its children, considered paramount in *Prince,* however, has now grown less certain after *Tinker.*

The question thus becomes how must the court adjust the competing interests of the state and the represented minors. The Court in *Tinker, supra,* 393 U.S. at 513, 89 S.Ct. 733, held that the students' protected expression may only be reasonably regulated in carefully restricted circumstances at school in order to avoid any material disruption of the classroom, any substantial disorder of school work, and any invasion of the rights of others. *Tinker* thus may mark a "definite departure from *Prince.* . . ." 83 Harv.L.Rev., *supra* at 158, and may confine the exercise of the state's power to reasonable time, place, and manner restrictions of the juveniles' First Amendment expression. Assuming *Prince* has been so severely limited, the state's attempt herein completely to restrict juveniles' access to certain "protected speech" is plainly impermissible. The state has imposed a blanket restriction, not merely a regulation within the confines of a school during school hours as in *Tinker.* The restriction as to minors' access to the material must therefore be struck down as it would be struck down if it infringed the freedom of expression of adults as well. *Accord Shanley v. Northeast Independent School District, supra,* 974–78 [invalidating school policy restricting distribution of literature by students off campus and after school hours as beyond the scope of the school board and within the jurisdiction of local breach of the peace laws only].

*v. Barnette,* 319 U.S. 624, 639, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), must not, however, be lost in the analogy.

At the May 3, 1978, hearing on preliminary and permanent relief, defendants conceded that they must show a "compelling state interest which would justify the regulation of the type which is contained in this statute." Tr. at 108. The only defendants' evidence which has been proffered has been the one book and two magazines introduced above. These examples of the purportedly restricted material combined with their arguments of constitutionality are woefully insufficient proof and persuasion under this stringent test of validity. If a compelling state interest standard is applied, the statute must certainly be invalidated. If a modification of this standard, that is of reasonable time, place, and manner regulation, were instead applied, the statute would also be struck down as the restriction imposed is not tempered in any manner whatsoever.

Even if the much less strict standard of a "significant state interest" coupled with proof that the statute is a means serving such state interest, is selected, the statute must be declared unconstitutional as well. This second choice of a standard for our review is culled from the Supreme Court's analysis of the collision of the state's interest in protecting its children and of the minors' own constitutional rights to privacy. The court indulges every inference in favor of the state defendants by even reaching this standard and not simply invalidating the statute on the rigorous compelling state interest test alone. Nevertheless, by employing this relatively generous standard, the same defeat results.

Using this less stringent standard, the Supreme Court ruled in *Planned Parenthood of Central Missouri v. Danforth, supra,* that a minor's access to abortion could not be flatly denied by a statutory requirement of parental consent. In *Carey v. Population Services International, supra,* a plurality determined that a minor's access to contraceptives could not be absolutely withheld by the state. In each instance a "significant state interest" was identified, that of safeguarding the family unit and parental authority, *Danforth,* 428 U.S. at 75, 96 S.Ct. 2831, and of reducing the incidence of teenage sexual activity, *Carey,* 431 U.S. at 692, 97 S.Ct. 2010. But also in each instance the state failed to demonstrate that the statutory course chosen would lead to the identified significant result.

> [W]e again confirm the principle that when a State, as here, burdens the exercise of a fundamental right, its attempt to justify that burden as a rational means for the accomplishment of some significant State policy requires more than a bare assertion, based on a conceded complete absence of supporting evidence, that the burden is connected to such a policy. [footnote omitted].

*Carey* at 696, 97 S.Ct. at 2022.[3]

Here the state identifies laudable interests; the reduction of teenage drug use and the strengthening of the parent-child relationship. But once again, the state has burdened the minors' fundamental, if not preeminent, interest, and has offered no evidence to demonstrate that limiting access to printed material will foster the goal they envision. The statute must therefore be invalidated under this more indulgent standard as well.

The court, having found that the statute by its terms sweeps overbroadly and proscribes protected speech and having also found no compelling state interest and no significant state policy reasonably effected by the restriction, must DECLARE the statute unconstitutional and must ENJOIN its enforcement.

Accordingly, the court hereby: (1) GRANTS summary judgment in favor of plaintiffs on their challenge of the one stat-

**3.** The Court distinguished *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), in a footnote signalled at the end of the quoted passage.

*Ginsberg* concerned a statute prohibiting dissemination of obscene material that it held was not constitutionally protected. In contrast [the statute under review] concerns distribution of material access to which is essential to exercise of a fundamental right. *Carey v. Population Services International,* 431 U.S. 678, 696–97 n. 22, 97 S.Ct. 2010, 2023, 52 L.Ed.2d 675 (1977).

ute remaining within our jurisdiction, Ga. Code § 26–9912; (2) DECLARES Ga.Code § 26–9912 unconstitutional; and (3) PRELIMINARILY and PERMANENTLY ENJOINS the state defendants from enforcing Ga.Code § 26–9912.

IT IS SO ORDERED.