HIGH OL' TIMES, INC., et al.

v.

George BUSBEE, et al.

Civ. A. No. 78–628 A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 1, 1980.

W. Bruce Maloy, Reber Boult, Atlanta, Ga., for plaintiffs.

Daryl Robinson, G. Stephen Parker, Atlanta, Ga., Thomas Charron Dist. Atty., Cobb County Circuit, Marietta, Ga., George P. Dillard, County Atty., Dekalb County, Decatur, Ga., Herbert A. Rivers, Sol. Gen., State Court of Cobb County, Marietta, Ga., George Weaver, Asst. Sol. Gen., Hinson McAuliffe, Sol. Gen., State Court of Fulton County, Atlanta, Ga., Robert G. Johnston, III, Sol. Gen., State Court of Muscogee County, Columbus, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiffs in this civil rights action, 42 U.S.C. § 1983, seeking injunctive and declaratory relief, challenge the constitutionality of three Georgia criminal statutes: (1) Ga.Code § 79A–811.1 proscribing the sale or offer of "drug-related objects" to anyone,

enacted in 1978 and subsequently repealed, (2) Ga.Code § 79A–811.1 enacted in 1980 proscribing the sale or distribution of "drug-related objects" to anyone, and (3) Ga.Code § 26–9913 prohibiting the sale or distribution of such objects to minors. Plaintiffs originally brought this action over two years ago. Although we expressed doubt at that time as to the statutes' constitutionality, we abstained from ruling on the validity of these state laws pending an authoritative interpretation of the statutes by the Georgia Supreme Court. *High Ol' Times, Inc. v. Busbee*, 449 F.Supp. 364 (N.D.Ga.1978). The Fifth Circuit subsequently reversed our order of abstention and remanded the case to us for further proceedings. *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980). The action is now before this court once again for a ruling on the constitutionality of the challenged state laws on the parties' cross motions for summary judgment, Rule 56, Fed. R.Civ.P.[1]

Plaintiffs are owners of and wholesalers to small shops selling various "novelty" items, including ornate pipes, rolling papers, screens, testing kits, clips, small spoons, and other accessories. Defendants are local and state officials charged with enforcing and executing the laws of Georgia. Plaintiffs claim that the statutes are facially unconstitutional, and base their challenge to the laws on the United States Constitution, Art. I, § 8, cl. 3 (commerce clause); Art. I, § 9, cl. 3 (bill of attainder); Art. VI, cl. 2 (supremacy clause); and the Fifth and Fourteenth Amendments (due process, equal protection). Jurisdiction is invoked under 28 U.S.C. §§ 1331, 1343(3), (4).

Although plaintiffs have launched a sweeping constitutional attack on the state statutes, the thrust of plaintiffs' claims, and their strongest argument, is that the old and new versions of Ga.Code § 79A–811.1 and § 26–9913 relating to minors are uncon-

1. Although we abstained from ruling on Ga. Code §§ 79A–811.1 and 26–9913, we held Ga. Code § 26–9912 dealing with drug-related printed matter to be violative of the First Amendment to the United States Constitution. *High Ol' Times, Inc. v. Busbee*, 456 F.Supp. 1035 (N.D.Ga.1978). That order was subsequently affirmed on appeal. *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 141 (5th Cir. 1980).

stitutionally vague. This court agrees that both versions of section 79A–811.1 are void for vagueness, and therefore we will not treat the plaintiffs' other constitutional challenges or the defendants' responsive arguments. Similarly, we find that Ga.Code § 26–9913 is void for vagueness and must be invalidated.

## I. CASE OR CONTROVERSY

As a preliminary matter, defendants allege that the repeal of the 1978 section 79A–811.1 and the enactment in 1980 of a new version of the law renders plaintiffs' challenges to the old section 79A–811.1 moot. In support of their argument, defendants contend that the plaintiffs are neither subject to, nor targets for, any state prosecution brought under the old law.

■ Defendants raised this issue once before, and we refused to dismiss plaintiffs' challenge to the old law as moot. *See* Order of October 17, 1980. We based our ruling on the representation by plaintiffs that defendants had seized, under the old law, objects belonging to plaintiffs and that those objects were still in defendants' possession. Defendants do not controvert this assertion. We decline to alter our prior ruling, and conclude that the controversy between the parties as to the old version of section 79A–811.1 is still alive and properly before this court.

■ We also continue to be satisfied that plaintiffs have the requisite standing to challenge the laws, and that the elements of justiciability required to maintain this action are present. U.S.Const., Art. III. *See High Ol' Times, Inc. v. Busbee*, 449 F.Supp. at 366–67; *High Ol' Times, Inc. v. Busbee*, 621 F.2d at 138–39. No criminal proceedings against plaintiffs are pending in the state courts, and therefore we are not prohibited from acting under the principles set forth in *Younger v. Harris*, 401 U.S. 37, 39, 91 S.Ct. 746, 748, 27 L.Ed.2d 669 (1971).

Further, before considering the facial constitutionality of a state statute, we must determine if the state courts have placed a limiting construction on the laws. *See Erz-*

*noznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). Although defendants have informed us that the constitutionality of at least one of these laws has been raised in a pending unrelated state prosecution, we are unaware of any judicial interpretation of the enactments. Thus, the statutes are vulnerable to plaintiffs' constitutional attacks and plaintiffs are entitled to adjudicate their claims in this court.

## II. THE DRUG–RELATED PARAPHERNALIA LAWS

### A. *The new section 79A–811.1*

The newly-enacted version of section 79A–811.1 provides, in pertinent part:

(1) "Drug related object" means any instrument, device, or object which is designed or marketed as useful primarily for one or more of the following purposes:

(A) To inject, ingest, inhale, or otherwise introduce into the human body marijuana or a controlled substance;

(B) To enhance the effect on the human body of marijuana or a controlled substance;

(C) To test the strength, effectiveness, or purity of marijuana or a controlled substance;

(D) To process or prepare for introduction into the human body marijuana or a controlled substance;

(E) To conceal any quantity of marijuana or a controlled substance;

(F) To contain or hold marijuana or a controlled substance while it is being introduced into the human body.

(2) It shall be unlawful for any person or corporation, knowing the drug related nature of the object, to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person any drug related object. It shall also be unlawful for any person or corporation, knowing the drug related nature of the object, to display for sale, or possess with the intent to distribute, any drug related object. Unless stated within the body of the adver-

tisement or notice that the object that is advertised or about which information is disseminated is not available for distribution of any sort in Georgia, it shall be unlawful for any person or corporation, knowing the drug related nature of the object, to distribute or disseminate in any manner to any person any advertisement of any kind or notice of any kind which gives information, directly or indirectly, on where, or how, or from whom, or by what means any drug related object may be obtained or made. "Knowing" as used herein means either actual or constructive knowledge of the drug related nature of the object, and a person or corporation has constructive knowledge of the drug related nature of the object if he or it has knowledge of facts which would put a reasonable and prudent person on notice of the drug related nature of the object.

(3) It shall be unlawful for any person or corporation, other than a licensed pharmacist or practitioner licensed to dispense Legend Drugs, to sell, lend, rent, lease, give, exchange, or otherwise distribute to any person a hypodermic syringe or needle designed or marketed primarily for human use. It shall be an affirmative defense that the hypodermic syringe or needle was marketed for a legitimate medical purpose.

(4) For a first offense, any person or corporation which shall violate any provision of this section shall be guilty of a misdemeanor and, upon conviction, shall be punished as for a misdemeanor. For a second offense, the defendant shall be guilty of a misdemeanor of a high and aggravated nature and, upon conviction, shall be punished as for a misdemeanor of a high and aggravated nature. For a third or subsequent offense, the defendant shall be guilty of a felony and shall, upon conviction, be imprisoned for not less than one year nor more than five years and shall be fined not more than $5,000.

(5) All instruments, devices, and objects which are distributed or possessed in violation of this section are hereby declared to be contraband. . . .

(6) Should any part or provision of this section be declared by a court of competent jurisdiction to be invalid or unconstitutional, such decision shall not affect the validity of the section as a whole nor any part thereof other than the part so declared to be invalid or unconstitutional.

1980 Ga.Laws at 1288–92. Plaintiffs attack Ga.Code § 79A–811.1 primarily on the ground that it is so vague that it is unenforceable. New criminal statutes that punish "a novel offense that has no established bounds" are particularly susceptible to a void for vagueness challenge. *United States v. Harriss*, 347 U.S. 612, 634, 74 S.Ct. 808, 820, 98 L.Ed. 989 (1954) (Jackson, J., dissenting). Plaintiffs assert they are unable to determine what types of objects are prohibited by this statute.

The purpose of this law is evident and undisputed. The state legislators intended to prohibit the sale or distribution of items or accessories that are frequently employed in drug use and sold by small stores, commonly called "head shops," specializing in such items. The state thus hopes to inhibit the use of drugs and the growth of the so-called "drug culture" in our society. But even statutes with a laudable purpose must pass constitutional muster.

### 1. Vagueness

The doctrine of vagueness is anchored in the due process clauses of the Fifth and Fourteenth Amendments. Due process has two requirements: (1) laws must provide fair notice to persons of ordinary intelligence of the precise conduct proscribed, and (2) laws must provide standards and guidance to law enforcement officers, judges, and juries, to prevent arbitrary and discriminatory enforcement. As the Supreme Court has stated:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.

Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted). *See also Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Especially when a criminal statute is involved, the Court has warned that

> [n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.

*Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (footnote omitted). Lawmaking will not be entrusted "to the moment-to-moment judgment of the policeman on his beat." *Gregory v. City of Chicago*, 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (Black, J., concurring).

In reviewing the statutes at issue here, we are also mindful, however, of the admonition of the Supreme Court that statutes should be construed as constitutional whenever possible. *See, e. g., Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). In certain situations, for example, the court may imply a missing *mens rea* element in a statute to give the statute constitutional viability. *See, e. g., Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Indeed, a certain amount of vagueness must be tolerated in lawmaking due to the inherent imprecision in language. All that due process requires is that the law give sufficient warning to enable a person to conform his or her conduct in accordance with the law and to guard against discriminatory enforcement. *See Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

■ Applying these precepts of statutory and constitutional construction to the statute at hand, we must conclude that Ga.Code § 79A–811.1 is void for vagueness. The statute fails the second prong of the *Grayned* test by inviting discriminatory and arbitrary enforcement.[2]

The key language on which we focus our analysis occurs in subsection (1) of the statute in the definition of "drug-related object." A "drug-related object" is any object "designed or marketed as useful primarily for" ingesting, processing, enhancing the effect of, concealing, or containing controlled substances. The broad sweep of this language is immediately evident. Although there are some objects which clearly fall

---

2. Defendants argued at the hearing held in this case on October 22, 1980, and again in their summary judgment brief submitted to the court, that except where First Amendment rights are implicated, a statute may not be struck down as facially unconstitutional unless the statute has been applied unconstitutionally. Defendants cite several cases in support of this argument. *See, e. g., United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), and *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Further, defendants protest that they intend to enforce, and have enforced, the statute only in what they construe to be a constitutional manner. *See* Affidavits of George Weaver and Ray Johnson, Exhibits L and N to Defendants' Brief.

Defendants' argument and citations are inapposite in the instant case, however. *Parker v.*

*Levy* involved the construction of military law which "is a jurisprudence which exists separate and apart from the law which governs in our federal establishment." 417 U.S. at 744, 94 S.Ct. at 2556. The Court further noted that "[d]ecisions of this Court during the last century have recognized that the long-standing customs and usages of the services impart accepted meanings to the seeming imprecise standards" of the Code of Military Justice. *Id.* at 746–47, 94 S.Ct. at 2557. In *United States v. Raines,* the issue before the Court was one of standing: a court may not assess the constitutionality of a statute in a purely hypothetical case. We can imagine no situation in which a law, unconstitutional on its face, may be saved by a showing that law enforcement officers had in several instances enforced the law in a constitutional manner.

within the statutory definition, there is also a substantial marginal gray area where persons of ordinary intelligence would differ as to what items are proscribed. Plaintiffs assert that almost any item can be considered drug paraphernalia under the statute because there is no reference as to whose intent controls. Therefore, it is possible for an innocent person to be prosecuted for the intent of another. *See Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich.1980); *Hejira Corp. v. J. D. MacFarlane*, C.A. No. 80–F–824 (D.Colo. September 15, 1980); *Riddle v. Clack*, C.A. No. 3–77–0525–D (N.D.Tex. August 24, 1977); *Magnani v. City of Ames*, 493 F.Supp. 1003 (S.D.Iowa 1980); *Indiana Chapter of NORML v. Sendak*, C.A. No. TH 75–142–C (S.D.Ind. February 4, 1980); *Weingart v. Town of Oyster Bay*, C.A. No. 79–C–2932 (E.D.N.Y. December 17, 1979); *Bambu Sales, Inc. v. Gibson*, 474 F.Supp. 1297 (D.N.J.1979).

Defendants argue strenuously that the intent of the *transferor* of the objects is comprehended in the phrase "designed or marketed as useful primarily for" drug use in the definition of "drug-related objects." This intent element furnishes the guidepost for enforcement and provides the fair warning required by due process. The requirement that the seller intended the objects to be employed in drug use, defendants contend, cures any constitutional infirmities in the statute. In support of this argument, defendants cite several cases that have read the words "designed for" or a similar phrase to carry the requirement of proof of the intent or knowledge of the seller or distributor. For example, defendants cite *The Flipside v. Village of Hoffman Estates*, 485 F.Supp. 400, 407 (N.D.Ill.1980), which upheld against a vagueness attack the phrase "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs...." Defendants also cite, *inter alia, Cardarella v. City of Overland Park, Kansas*, No. 86246 (Dist.Ct., Johnson County, Kan., December 3, 1979), a state court opinion reading the intent of the seller into the phrase "designed for use," and upholding the paraphernalia ordinance at issue as constitutional. In addition, defendants refer to several cases construing the Model Drug Paraphernalia Act (MDPA), drafted by the United States Justice Department and adopted in various forms by several states. These cases have upheld the similar "designed for use" language in the definition of drug paraphernalia used in the MDPA, concluding that it refers to the intent of the accused. *See, e. g., The Casbah v. Thone*, 512 F.Supp. 474 (D.Neb.1980). *Accord, Tobacco Accessories v. Treen*, 501 F.Supp. 168 (E.D.La.1980); *Florida Businessmen for Free Enterprise v. City of Hollywood*, C.A. No. 80–6157 (S.D.Fla.1980); *Delaware Accessories Trade Assoc. v. Gebelein*, 497 F.Supp. 289 (D.Del.1980); *World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J.1980).

Looking at the statute as a whole, we can agree with defendants that the phrase "designed or marketed as useful primarily for" drug use could be construed to refer to the criminal intent of the person charged with the offense. This construction narrows the statute considerably and provides fair warning to persons who intend "drug-related objects" to be used with controlled substances. If reading the intent of the accused into the definition of "drug-related object" was all that were required to render the statute constitutionally sound, however, we might be persuaded by defendants' argument. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). But this construction of the statute does not cure it of all constitutional infirmity. "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. at 108, 92 S.Ct. at 2298. Ga.Code § 79A–811.1 is woefully silent as to any criteria that would aid in determining whether a person "designed or marketed" an object as paraphernalia, and hence minimize the risk of discriminatory enforcement.

We have reviewed with care the cases marshalled by defendants and find that

they do not, in fact, mandate the result defendants urge this court to adopt. The cases that have rejected vagueness challenges to statutory paraphernalia definitions using the phrase "designed for use" or "intended for use" have construed different statutes than the one we have before us today. In these cases, in superimposing an intent requirement on the paraphernalia definition, the courts at least partly justified their construction on the ground that the statutes in question provide specific directions to law enforcement officers, courts, and juries in determining that implied intent. The statutes or ordinances provide factors or guidelines that focus on the context in which the item is found or on its physical properties. The judge in *The Flipside* decision, for example, specifically referred to "[t]he guidelines [used in determining whether to apply the ordinance to a particular business] adopted almost contemporaneously with the ordinance...." 485 F.Supp. at 407. Those guidelines, "together with the terms used, lead this court to conclude that the operative words of the ordinance under attack are not vague." *Id.*[3] In *Cardarella,* the judge also referred to certain indicia set out in the ordinance, such as whether a person or business is a licensed distributor of tobacco and the nature of the advertising concerning the business. These factors, the court concluded, furnish "the necessary indication of in-

tent" and "provide fair warning to the merchant" as to what types of objects are prohibited. Slip op. at 3, 12–13. One of the cases cited by defendants, *Tobacco Road, Inc. v. City of Novi,* C.A. No. 79–71000 (E.D.Mich. June 21, 1979), is particularly illustrative of the need for criteria in a statute such as the one at issue here. In 1979, the court in *Tobacco Road* found the terms "cocaine spoons, marijuana or hashish pipes, and narcotics paraphernalia" used in a Novi city ordinance to be sufficiently precise to provide ascertainable standards of guilt. In 1980, the same court in *Music Stop, Inc. v. City of Ferndale,* 488 F.Supp. at 394, striking down a similar ordinance for vagueness, referred to the danger that arises when "[t]here is a complete dearth of objective standards" to aid in enforcement of the law:

> [as] has undisputedly been the case in the City of Novi, such uncertainty leads inevitably to subjective, arbitrary, and discriminatory law enforcement, and delegates municipal policy making to police officers and to judges.

Similarly, in the cases upholding the "designed for use" language in the MDPA, the courts consistently refer to the factors included in the model act to guide law enforcement officers, judges, and juries in determining what is controlled by the law.[4]

---

**3.** Defendants' affidavits from a peace officer as to the criteria he considers before making an arrest under this law do not remedy the problem of statutory vagueness. *See* Affidavits of Ray Johnson, Defendants' Brief and Reply Brief at Exhibits L, AA. These affidavits, in fact, illustrate the point that enforcement under this law is entrusted to the individual knowledge and opinions of each officer.

**4.** The MDPA provides, for example, in the first article:

> In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:
> (1) Statements by an owner or by anyone in control of the object concerning its use;
> (2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

> (3) The proximity of the object, in time and space, to a direct violation of this Act;
> (4) The proximity of the object to controlled substances;
> (5) The existence of any residue of controlled substances on the object;
> (6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act should not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;
> (7) Instructions, oral or written, provided with the object concerning its use;
> (8) Descriptive materials accompanying the object concerning its use;
> (9) National and local advertising concerning its use;

*See, e. g., World Imports, Inc. v. Woodbridge Township*, at 432; *Tobacco Accessories v. Treen*, 501 F.Supp. at 170 (that enforcement authorities "shall consider" certain "legally relevant" factors narrows the statute); *Florida Businessmen for Free Enterprise v. City of Hollywood*, slip op. at 5–6; *Delaware Accessories Trade Assoc. v. Gebelein*, 497 F.Supp. at 293 ("the Act goes further than most in attempting to promote uniformity in enforcement by providing a list of the kinds of circumstantial evidence that should be considered for this purpose."). *See also Record Revolution No. 6 v. City of Parma*, 492 F.Supp. 1157, 1170–71 (N.D.Ohio 1980), *stayed pending appeal* No. 242–79 (6th Cir. May 14, 1980).

Finally, defendants urge this court to consider an opinion of the Northern District of Alabama, *Gasser v. Morgan*, 498 F.Supp. 1154 (N.D.Ala.1980), holding a statute almost identical to Ga.Code § 79A–811.1 to be constitutional. In construing the statutory definition of "drug-related object," the court in *Gasser* superimposed a requirement of proof of the accused's intent on the language "designed, produced or marketed as useful primarily for" drug use. Although the Alabama court found that its construction "cures any alleged vagueness in the statute's wording," 498 F.Supp. at 1159, the court failed, however, to even reach the second prong of the *Grayned* due process analysis: whether the statute provides adequate standards for uniform and non-discriminatory enforcement. We therefore do not find the construction of the similar Alabama statute by the *Gasser* court to resolve ·the issue of the constitutionality of Ga.Code § 79A–811.1.

Thus, even if we read an intent or knowledge requirement into the definition of

(10) The manner in which the object is displayed for sale;
(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;
(12) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

"drug-related object," the absence of standards for enforcement in Ga.Code § 79A–811.1 raises the spectre of discriminatory application of the law.

Where definite guidelines for enforcement officials are not present, use of the ordinance to expand arrest opportunities and justify searches magnifies the potential harm from enforcement of the ordinance.

*Geiger v. City of Eagan*, 618 F.2d 26, 29 (8th Cir. 1980). *See also Record Museum v. Lawrence Township*, 481 F.Supp. 768, 773–74 (D.N.J.1979) (although language of statute is broadly applicable to many retailers, only "head shops" investigated). We find that section 79A–811.1 is impermissibly vague and fails under constitutional standards of due process.

2. *Severability*

Ga.Code § 79A–811.1 contains a severability clause in subsection (6) which expresses the intent of the legislature that if any part of the statute should be found invalid, the remainder of the statute will stand. Thus, if the statute contains unobjectionable provisions which can be separated from those found to be unconstitutional, and can be given legal effect standing alone, the provisions may be maintained as valid. *See, e. g., Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

█ Subsection (3) of section 79A–811.1 controlling the dispensing of hypodermic syringes appears to be such a provision. The subsection makes it unlawful for anyone not licensed as a pharmacist or practitioner to sell or distribute "a hypodermic syringe or needle designed or marketed primarily for human use," except to serve a "legitimate medical purpose." Unlike subsections

(13) The existence and scope of legitimate uses for the object in the community;
(14) Expert testimony concerning its use. Model Drug Paraphernalia Act, drafted by the Drug Enforcement Administration of the United States Department of Justice, August 1979, *reproduced in 7 Drug Enforcement* 29–31 (March 1980). *See also* Comments to Article I, MDPA.

(1) and (2) of the statute which outlaw the sale, distribution, or display of an ambiguous genre of "drug-related objects," subsection (3) states its proscriptions with clarity. The definition of syringe provides an objective standard for defining the prohibited objects and conduct. The subsection gives fair notice of what is unlawful, and furnishes sufficient guidance for law enforcement officers. We will sever subsections (3), (4), (5), and (6) from the remaining invalid provisions of section 79A–811.1.

█ The plaintiffs stated at the hearing held in this case on October 22, 1980, that they do not have standing to challenge the third sentence of subsection (2) prohibiting the dissemination of advertisements relating to "drug-related objects." Plaintiffs challenge the defective definition of "drug-related objects" in subsection (1), however, which affects the validity of all of subsection (2) and renders the entire subsection void. The language controlling advertising cannot be given legal effect standing alone and is not, therefore, severable from the rest of the provision. Our ruling as to the constitutionality of section 79A–811.1 is thus directed to subsection (1) and subsection (2) in their entirety.[5]

## B. *The old section 79A–811.1 and section 26–9913.*

The original version of Georgia's drug paraphernalia statute provides, in pertinent part, as follows:

(a) 'Drug-related object' means any instrument, device or object which is primarily intended for one or more of the following purposes:

(1) To inject, ingest, inhale or otherwise introduce into the human body marijuana or controlled substance;

(2) To enhance the effect on the human body of marijuana or a controlled substance;

(3) To test the strength, effectiveness, or purity of marijuana or a controlled substance.

(b) It shall be unlawful for any person ('transferor') to sell, offer to sell, exchange, or offer to exchange any drug-related object to any person but one whom the transferor knows to be authorized by law to possess or have under his control marijuana or a controlled substance for which the object is primarily intended to be used.

(c) Any person who shall violate any provision of this Section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished as for a misdemeanor. . . .

Ga.Code § 79A–811.1 (repealed 1980). At approximately the same time the Georgia General Assembly passed the original version of section 79A–811.1 relating to drug-related objects, it also passed Ga.Code § 26–9913 restricting the sale or distribution of such objects to minors. The section provides, in pertinent part:

(3) 'Minor' means any unmarried person under the age of 18 years.

(4) 'Drug-related object' means any machine, instrument, tool, equipment, contrivance or device which an average person would reasonably conclude is intended to be used for one or more of the following purposes:

(A) To introduce into the human body any dangerous drug or controlled substance. . .

(B) To enhance the effect on the human body of any dangerous drug or controlled substance. . .

(C) To conceal any quantity of any dangerous drug or controlled substance. . .

(D) To test the strength, effectiveness or purity of any dangerous drug or controlled substance. . . .

---

**5.** The first sentence of subsection (2) contains the general *mens rea* element of the statute requiring knowledge or constructive knowledge on the part of the accused in selling or distributing "any drug-related object." Defendants argue that this state of mind element is constitutionally sufficient. Because our ruling is based on the ambiguity of the definition of "drug-related object" in subsection (1), and because this definition goes to the very heart of the statute, we need not address defendants' argument as to the sufficiency of the general *mens rea* requirement in the law.

The statutes are challenged by plaintiffs on the same grounds as the new version of section 79A–811.1 discussed above. These two laws, like their more recent counterpart, also suffer from fatal constitutional flaws.

When the question of the constitutionality of these statutes originally came before this court for consideration, we abstained from ruling because the state courts had not had an opportunity to construe the statutes. At that time, we suggested that it might be possible for the Georgia Supreme Court to

> interpret the operative language of Ga. Code § 79A–811.1, "drug-related object means any instrument, device or object which is *primarily intended* for [drug use] . . .," as solely applicable to the primary intentions of the vendor or transferor who may be prosecuted under the act. Such interpretation may well shield Ga. Code § 79A–811.1 from constitutional attack.

We also stated that

> Regrettably, such construction may not also be applied to Ga.Code § 26–9913 in which the state legislature has anomalously selected the tort "reasonable man" standard to measure the intended use of the subject objects.

*High Ol' Times, Inc. v. Busbee*, 449 F.Supp. at 368. Defendants urge this court to impose a judicial gloss of the seller's intent on the original version of section 79A–811.1 and by doing so to save it from plaintiffs' challenge. Defendants fail, however, to suggest any means by which we might construe section 26–9913 to be constitutional.

The Fifth Circuit stated in its opinion reversing our order of abstention that abstention is improper unless an allegedly ambiguous statute " 'is obviously susceptible of a limiting construction.' " *High Ol' Times, Inc. v. Busbee*, 621 F.2d at 140 n.5. The court went on to declare that "we have serious doubts that a saving construction exists which would eliminate the vagaries

of either of these statutes [§ 79A–811.1 and § 26–9913]," and "the district court's suggestion . . . appears unlikely." *Id.* at 140 and n.5.

The Fifth Circuit's reservations as to the constitutionality of the original section 79A–811.1 and section 26–9913 are well taken. As our discussion of the constitutionality of the new version of section 79A–811.1 indicates, there is no saving construction that can be imposed on section 79A–811.1 to insulate it from plaintiffs' challenge. Even if we were to construe the words "primarily intended for" as applicable to the primary intentions of the seller or distributor as defendants urge us to do, the definition of "drug-related objects" remains impermissibly vague. *See Record Head, Inc. v. Olson*, 476 F.Supp. 366 (D.N.D.1979). Thus, for the reasons for which we found the 1980 version of section 79A–811.1 to be unconstitutional, we also find the original section 79A–811.1 invalid.[6]

■ The definition of "drug-related objects" in section 26–9913 as any object "which an average person would reasonably conclude is intended to be used" with drugs does not even lend itself to a construction focused on the seller's intent. The vagueness inherent in this statute is evident, and has apparently been conceded by defendants' failure to brief this issue or to assert any arguments as to the constitutionality of the statute. Section 26–9913 provides neither fair notice nor any ascertainable guidelines for enforcement, and is, therefore, unconstitutional.

## II. RELIEF

■ Plaintiffs seek both declaratory relief as to the constitutionality of the challenged statutes and injunctive relief as to their enforcement. 28 U.S.C. §§ 2201, 2202; 42 U.S.C. § 1983. In *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Supreme Court stated that although injunctive as well as declaratory

---

**6.** The original version of § 79A–811.1 also contains a severability clause in subsection (2). The constitutional infirmity of vagueness pervades the entire statute, however, and therefore renders it unconstitutional in its entirety.

relief may be available under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), when no state criminal proceeding is pending, the plaintiff must still make a showing that injunctive relief is required. The plaintiffs must at least show, in other words, that they will suffer irreparable injury if an injunction does not issue.

In this case, we see no need for injunctive relief at this time. "Courts generally assume that government officials will honor a declaratory judgment as long as it is in force . . . ." *Bambu Sales, Inc. v. Gibson*, 474 F.Supp. at 1306. *See also Record Head, Inc. v. Olson*, 476 F.Supp. at 372–73. We will deny plaintiffs' request for injunctive relief.

In conclusion, we emphasize that this court is aware of the deep concern of the legislature and parents of this state in the widespread and growing use of drugs among our youth. Many citizens believe that the "head shop" industry provides materials that, although capable of many innocent uses, are often employed to facilitate and enhance the use of illicit drugs. The distribution of these devices and objects is also believed to contribute to a glamorized image of the modern so-called "drug culture," and to lure susceptible young people into drug use. This court shares with parents, citizens and elected representatives their concern about this problem.

Clearly, the state has the power to enact laws to discourage the use of drug-related devices and to protect the welfare of its citizens. But the magnitude and immediacy of the problem of drug abuse does not permit this court or the legislature to disregard the Constitution and to decide this, or any other case, on the basis of personal choice alone. As the Fifth Circuit has noted, "[t]he public interest in protecting constitutional rights is at least as strong as limiting the proliferation" of drug paraphernalia. *High Ol' Times, Inc. v. Busbee*, 621 F.2d at 141 n.9, *quoting Santilli v. Hamilton Township*, C.A. No. 79–1301 (D.N.J. June 1, 1979).

Accordingly, we hereby GRANT summary judgment in favor of plaintiffs, and

DENY defendants' cross-motion for summary judgment. We DECLARE subsection (1) and subsection (2) of Ga.Code § 79A–811.1 (1980) to be unconstitutional. We also hereby DECLARE Ga.Code § 79A–811.1 (1978) and Ga.Code § 26–9913 to be unconstitutional in their entirety. We DENY plaintiffs' request for injunctive relief. The Clerk of the Court shall enter FINAL JUDGMENT in this action.